UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GARY KOMPOTHECRAS and
PHYSICIANS GROUP, LLC,

Plaintiffs,

v. Case No. 8:13-cv-3122-T-33TBM

BLOOMBERG, L.P., THE
ALLSTATE CORPORATION,
ALLSTATE INSURANCE COMPANY,
DAVID ARMSTRONG, KATHLEEN
SMITH f/k/a KATHLEEN WESTON,
and JENNIFER MOLINA,

Defendants.
_______________________________/

**ORDER**

This cause comes before the Court pursuant to Plaintiffs Gary Kompothecras and Physicians Group, LLC's Motion to Remand (Doc. # 11), which was filed on December 19, 2013. Defendants The Allstate Corporation and Allstate Insurance Company (collectively, "Allstate") filed a Response in Opposition to the Motion to Remand (Doc. # 30) on January 18, 2014. Plaintiffs filed a Notice of Supplemental Authority (Doc. # 41) on January 29, 2014. The Court grants the Motion to Remand as follows.

## I. Background

Plaintiff Gary Kompothecras, a Florida chiropractor, is the owner of Plaintiff Physicians Group, LLC as well as the owner of the ASK GARY trademark. (Doc. # 1-1 at ¶¶ 4, 18).

Physicians Group, LLC has its principal place of business in Sarasota, Florida and treats the victims of automobile accidents. (Id. at ¶¶ 3, 18). The ASK GARY trademark "is licensed to a third party that utilizes the trademark in a Florida Bar registered lawyer and medical referral service through the phone number 1-800-ASK-GARY." (Id. at ¶ 19).

On November 8, 2013, Plaintiffs filed an action in the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida, claiming that the Defendants, Allstate, Bloomberg L.P., David Armstrong, Kathleen Weston, and Jennifer Molina, conspired to "misappropriate trade secrets, tortiously interfere with Plaintiffs' advantageous business relationships and to defame Plaintiffs." (Id. at ¶ 191). According to Plaintiffs, "[t]he goal of the conspiracy was to utilize misappropriated trade secrets and proprietary or otherwise confidential information belonging to Physicians Group and to fabricate a ruse of a news story in order to manufacture a reason for a broad based and well disseminated attack against Plaintiffs to harm their financial interests." (Id. at ¶ 190).

The Complaint alleges that Allstate was motivated to harm Plaintiffs because "Allstate is one of the insurance companies insuring patients seen by Physicians Group and has long taken

issue with Physicians Group's . . . use of Magnetic Resonance Imaging ('MRIs') . . ., which Allstate believes increases the cost of its settlements in accident cases." (Id. at ¶ 20). According to the Complaint, Allstate "has a history of directing its attorneys to use the media, including Armstrong and Bloomberg, to run false, biased and unflattering defamatory articles against individuals and companies that are adversely affecting its profits." (Id. at ¶ 21).

Here, Plaintiffs contend that Allstate enlisted "Massachusetts based Bloomberg News reporter David Armstrong to publish a hit piece on Physicians Group, Dr. Kompothecras and ASK GARY." (Id. at ¶ 44). According to the Complaint, Bloomberg and Armstrong published a news article (titled "Fraud Probed with Romney's Fundraiser Cited by Victims") and a companion video (titled "Scantily Clad Women, Cash Used in Pain Service Ads"), which contain derogatory and malignant statements about Physicians Group, Kompothecras, and the ASK GARY referral service. (Id. at ¶¶ 52, 64, 89; Doc. # 1-5).

Defendants Kathleen Weston and Jennifer Molina are former clients of Physicians Group and are quoted in the ten-page Bloomberg article. The article states as to Weston:

> After a Jeep crashed into her Geo Metro in Clearwater, Florida, in 2009, Kathleen Weston's back and neck hurt. So she called 1-800-ASK-Gary, a medical referral service advertised on local

> television.
>
> Weston was directed to Physician’s Group, a chain of clinics founded by Gary Kompothecras, a chiropractor who has grown wealthy and gained prominence in Florida catering to car-accident victims. Earlier this month, capping years of political activity, Kompothcras was named a co-chair of presidential contender Mitt Romney’s Florida finance team.
>
> Weston was billed an average of $385 for each of 41 visits to a Kompothecras clinic- usually including a chiropractic adjustment, electrical stimulation and ultrasound treatment. The total tab after four months: $23,081.74. That included $4,109 for three MRI scans and $120 for a take-home stimulator, known as a TENS device, that retails at Sears for $37.99.
>
> “I said you have to be kidding me,” said Weston, who hired a lawyer and recently had the charges reduced by about half. “My neck was hurting. I was still having spasms.”

(Doc. # 1-5 at 3).

The article remarks as to Molina:

> Bedridden Client
>
> Jennifer Molina, a 32-year-old mother of three in Tampa, was on her way to buy diapers when her car was hit by a drunk driver in June 2007. One of her passengers called ask-Gary, which resulted in a visit to Molina’s hospital bed from Winters & Yonker, a firm with lawyers in the ask-Gary network that signed her as a client, Molina said.
>
> Her leg, broken in the accident, was repaired with a metal rod and three screws at the hospital. After her release, Molina said a Winters & Yonker legal assistant told her the firm had arranged for her treatment at Physicians Group. She said she assumed the visit was a routine follow up.

> During an examination, a Physicians Group staffer told her she had tension in her neck and shoulders, although she said she didn't complain of pain anywhere but her leg. Over the next three months, the clinic treated her neck and back with TENS, massages, electrical stimulation and heat packs. She said she liked the massages and thought it was important to go to the clinics because the law firm told her to.
>
> 'All Dirtbags'
>
> Molina has filed a confidential complaint against Winters & Yonker with the Florida Bar association, which said the "matter is under investigation." The law firm and Peter Brudny, Molina's attorney, declined to comment on the complaint.
>
> Chiropractors' bonuses at Physicians Group were based on how many services they ordered, according to Lauffer. In one case, he says a supervisor told him to "give a TENS unit out of every visit."

(Doc. # 1-5 at 9).[1]

Plaintiffs contend that Weston's statement that she was charged $120.00 for a device that retails at Sears for $37.99 "is a false statement." (Doc. # 1-1 at ¶ 68). Plaintiffs also

---

[1] In the Complaint, Plaintiffs allege: "Allstate, through its agents, consciously and willingly worked in concert with Peter J. Brudny, Esq. ('Brudny') to obtain Plaintiffs' trade secrets and other confidential and proprietary information and later disseminate this stolen information and documents, which had been originally misappropriated by a former employee of Physicians Group named Jeffery Lauffer." (Doc. # 1-1 at ¶ 24). Plaintiffs also allege that "Lauffer, through his attorney Brudny, threatened to provide the stolen information to the media and insurance companies unless Physicians Group paid Lauffer and Brudny $3 million ($3,000,000.00) in exchange for the stolen information being returned to Physicians Group." (Id. at ¶ 26). Plaintiffs refused, and "Brudny made good on his threats." (Id. at ¶ 31).

assert that the statements in the article "leave the reader with the implication that Physicians Group was overcharging its patients and failing to provide requested updates concerning the total cost of services charged. Notwithstanding, Weston has testified under oath that every time she requested an itemized statement of services from Physicians Group showing the costs incurred to date she was provided the same." (Id. at ¶ 71). The Complaint also alleges that "Weston made false and defamatory statements to a reporter for WTSP Channel 10 News." (Id. at ¶ 147). Specifically, Plaintiffs allege:

> Weston said she was treated for pain in her neck and back but also received treatments she didn't really want stating "Why do we have to do these five or six things every time I come? I just want a massage and I just want chiropractic adjustments. They said, 'This is what you have to do.'" The statement that anyone from Physicians Group required Weston to undertake any modalities that she refused is false and defamatory to Physicians Group's business reputation. Weston has subsequently testified under oath that she was free to refuse any treatment she wanted and in fact did so refuse treatments that she did not wish to undergo, which establishes the falsity of the contrary statement she made to the news media with knowledge of its falsity.

(Id. at ¶¶ 148-150).

Plaintiffs likewise indicate that "[t]he statement that Molina did not complain of pain anywhere but her leg is a total and complete fabrication. Molina's own records

indicate[] that she initially complained about pain in her neck and shoulder. Thereafter, her subsequent handwritten complaints indicate that she continued to complain of pain her neck and shoulder, as well as headaches and back pain." (Id. at ¶ 86). Molina's statement that she did not complain about neck and back pain, but was treated for neck and back pain "was designed to create a defamatory implication that Physicians Group was providing unnecessary services while ignoring its patient's actual complaints." (Id. at ¶ 87).

## II. Removal

On December 11, 2013, after being served with the Complaint on November 11, 2013, Allstate timely removed the action to this Court on the basis of diversity of citizenship. (Doc. # 1). In the Notice of Removal, Allstate indicates that "Plaintiff Gary Kompothecras is a citizen of the State of Florida" and that "Physicians Group LLC is also a citizen of the state of Florida." (Doc. # 1 at ¶ 8). However, in the Notice of Removal, Allstate acknowledges that Weston and Molina "are citizens of the State of Florida," and, thus, are not diverse from Plaintiffs. (Id. at ¶ 11). Allstate argues in the Notice of Removal: "Weston and Molina were joined in an improper attempt to defeat federal diversity jurisdiction." (Id. at ¶ 3).

Plaintiffs seek an Order of remand and an award of attorneys' fees for improper removal, arguing that they have asserted valid claims against non-diverse Defendants Weston and Molina in the Complaint.[2]

**III. Fraudulent Joinder**

"In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts." Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998)(quoting Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997)(citing Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989)). "The burden of establishing fraudulent joinder is a heavy one. Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court." Id.

"The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any

[2] Plaintiffs do not challenge that the amount in controversy exceeds the threshold requirement of $75,000. In seeking an Order of remand, Plaintiffs' arguments focus on the validity of the claims asserted against Weston and Molina. (Doc. # 11 at 3).

affidavits and deposition transcripts submitted by the parties." Id. The Court must review the factual allegations in the light most favorable to the plaintiff, and it must resolve uncertainties about the applicable law in favor of the plaintiff. Id.

The fact that the plaintiff may not ultimately prevail against the resident defendant is of no consequence. Id. The role of the court is not to weigh the merits of a plaintiff's claim beyond the determination of whether the claim is colorable under state law. Id. at 1380-81 (quoting Crowe, 113 F.3d at 1538). As stated in Stillwell v. Allstate Insurance Co., 663 F.3d 1329 (11th Cir. 2011), "all that is required to defeat a fraudulent joinder claim is a *possibility* of stating a valid cause of action." Id. at 1333 (emphasis added).

**IV. Analysis**

In count one of the Complaint, Plaintiffs collectively allege that Allstate, Bloomberg, and Armstrong misappropriated Plaintiffs' trade secrets; in count two Kompothecras alleges that Bloomberg, Armstrong, and Weston tortiously interfered with his advantageous business relationship; in count three Physicians Group alleges Allstate, Bloomberg, and Armstrong tortiously interfered with its advantageous business relationships; in count four, Plaintiffs assert a claim for

libel per se against Armstrong and Bloomberg; in count five, Plaintiffs assert a claim for libel by implication against Armstrong and Bloomberg; in count six, Plaintiffs assert a claim for slander by implication against Armstrong and Bloomberg;[3] in count seven, Plaintiffs assert a claim for slander per se against Weston; in count eight, Plaintiffs assert a claim for slander by implication against Weston; in count nine, Plaintiffs assert a claim for slander per se against Molina; in count ten, Plaintiffs assert a claim for slander by implication against Molina; and in count eleven, Plaintiffs assert a claim for civil conspiracy against all Defendants. (Doc. # 1-1).

It is not necessary for the Court to evaluate each of the claims above. If even one claim involving either Weston or Molina as asserted in counts two, seven, eight, nine, ten, or eleven is colorable, the case must be remanded.

**A. Defamation**

Under Florida law, "[d]efamation (libel and slander) may generally be defined as the unprivileged publication of false statements which naturally and proximately result in injury to another." Byrd v. Hustler Magazine, Inc., 433 So. 2d 593, 595

[3] The Complaint improperly labels two counts as "Count V." The Court has accordingly renumbered the Complaint counts.

(Fla. 4th DCA 1983). As defined by the Florida Supreme Court, defamation has the following five elements: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." Jews for Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla. 2008).

A "[c]ommunication that imputes to another conduct, characteristic, or condition incompatible with the proper exercise of his lawful business, trade, profession or office is slander per se." NITC, LLC v. Baker, 61 So. 3d 1249, 1254 (Fla. 4th DCA 2011).

Here, the Complaint pleads each of the required elements as to both Weston and Molina. For instance, in count seven, Plaintiffs allege Weston stated to a news reporter that Physicians Group told her "this is what you have to do" when she did not want to undergo certain treatments. (Doc. # 1-1 at ¶ 148). However, Weston later testified that she was free to refuse any unwanted treatments, and that she did, in fact, refuse certain treatments. (Id. at ¶ 150). The Complaint also alleges that Weston stated to a news reporter that she had "no idea how much the treatments cost" but that she later

testified that she was provided detailed itemizations of all costs incurred. (Id. at ¶¶ 151-152). These statements are arguably incompatible with Plaintiffs' lawful business enterprise.

The Complaint also alleges that Weston's published statements "were false" and "not privileged in any manner." (Id. at ¶¶ 153-154). Plaintiffs allege that Weston's statements "were made with knowledge of their falsity, reckless disregard for their truth and/or with malice." (Id. at ¶ 155). In addition, the Complaint alleges that Weston's statements damaged Physicians Group. (Id. at ¶ 156).

As for Molina, the Complaint alleges that she reported to the media that she only complained about pain in her leg, but that Physicians Group treated her neck and back (presumably, unnecessarily). (Id. at ¶ 172). However, the Complaint alleges that Molina's own notes show that she did complain of neck, back, and shoulder pain, as well as headaches. (Id. at ¶¶ 86, 173). As with Weston, the Complaint alleges that Molina's published statements, which are incompatible with Plaintiffs' lawful business operations, were knowingly false, not privileged, and caused damage to Physicians Group. (Id. at ¶¶ 174-176).

As stated in Crowe v. Coleman, 113 F.3d 1536, 1542 (11th

Cir. 1997), "In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims. Although we have said that district courts may look beyond the face of the complaint, we emphasize that the district court is to stop short of adjudicating the merits." Without weighing the merits of the claims, the Court finds that counts seven and nine, asserted against Weston and Molina for slander per se, are colorable and are not obviously fraudulent or frivolous.

In Florence v. Crescent Resources, LLC, 484 F.3d 1293, 1299 (11th Cir. 2007), the court cautioned that "if there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent." Such a possibility exists in this case, the Court finds that the slander claims are colorable, and remand is accordingly warranted.

**V. Costs and Attorneys' Fees**

Plaintiffs request an award of costs and attorneys' fees, pursuant to 28 U.S.C. § 1447(c), which provides that when a court remands a case, the court may award costs and attorneys' fees incurred as a result of the removal. However, the award

of costs and attorneys' fees is completely discretionary. See Publix Supermarkets, Inc. v. United Food & Commercial Workers Int'l Union, AFL-CIO & CLC, 900 F. Supp. 419, 421 (M.D. Fla. 1995)(citation omitted).

In the case at bar, this Court denies Plaintiffs' request for costs and attorneys' fees. Allstate had an objectively reasonable, but ultimately unsuccessful, basis for removing this action. Thus, although the Court has determined that it is appropriate to remand the case, the Court does not find that an award of costs and attorneys' fees is warranted.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**

(1) Plaintiffs Gary Kompothecras and Physicians Group, LLC's Motion to Remand (Doc. # 11) is **GRANTED**.

(2) Plaintiffs Gary Kompothecras and Physicians Group, LLC's request for costs and attorneys' fees for improper removal is **DENIED.**

(3) The Clerk is directed to **REMAND** this action to State Court pursuant to 28 U.S.C. § 1447(c) because this Court lacks subject matter jurisdiction.

(4) After remand has been effected, the Clerk shall close the case.

**DONE AND ORDERED** in Chambers, it Tampa, Florida, this 27th day of February, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record